UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

PAUL ELMOWSKY,

Defendant.

19-CR-00175 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Defendant Paul Elmowsky ("Defendant") is charged by Indictment on one count of knowingly receiving and possessing a firearm that was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5845(a)(4) and 5861(d). (Indictment, ECF No. 8.) Before the Court is Defendant's Motion to Suppress a firearm seized from his home on December 31, 2018 as well as statements that Defendant made to law enforcement that same day (the "Motion"). (Motion to Suppress, ECF No. 22; Memorandum of Law in Support of Defendant's Pretrial Motions, ("Def. Mem."), ECF No. 24). For the following reasons, Defendant's Motion is GRANTED in part and DENIED in part.

## BACKGROUND

The facts herein are taken from the Complaint, Indictment, Defendant's Motion, including Defendant's affidavit ("Def. Aff.," ECF No. 25), and the Government's Response to Defendant's Motion ("Gov. Opp.", ECF No. 26).

On December 28, 2018, the Rockland County Sheriff's Department petitioned for the suspension of Defendant's pistol permit. (Compl. ¶ 4(a).) On December 31, 2018, Rockland Supreme Court Justice Thomas E. Walsh issued a suspension order invalidating Defendant's pistol permit ("Suspension Order"). (*Id.* ¶ 4(b); Gov. Opp., Ex. A.) The Suspension Order directed

JUDGE
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/14/2019

Defendant to surrender his permit and weapons "immediately." (Gov. Opp., Ex. A.) That same day, the Rockland County Sheriff's Office, New York City Police Department and Orangetown Police Department went to Defendant's home in Nyack, NY to enforce the Suspension Order at approximately 4:35pm. (Compl. ¶ 4(c); Def. Mem., Ex. A ("Bill of Particulars") at 1.)

Defendant contends that "approximately 15-20 law enforcement officers from various agencies, without a search warrant . . . stormed through my front door with guns drawn, handcuffed [sic] and I was forcibly placed into custody." (Def. Aff. at 1.) In addition to recovering permitted pistols, the officers recovered an Uzi 9-millimeter firearm (the "Uzi"), a weapon not registered to Defendant in the National Firearms Registration and Transfer Record. (Compl. ¶¶ 4(c), 5.) According to Defendant, he "did not provide consent to any search of [his] home," and the officers "interrogated [him] without *Miranda* warnings." (Def. Aff. at 1.) Defendant also contends that the Rockland County Sheriff's Office posted deputies to "sit on" Defendant's home overnight. (Def. Mem. at 1.)

The Government provides a divergent account of the events that transpired on December 31, 2018. The Government contends that only two officers arrived initially at Defendant's home, and that Defendant told them they could come inside his garage. (Gov. Opp. at 4; *see also* Bill of Particulars at 2 (Defendant stated in sum and substance, "Ok, come in . . . follow me . . .You have permission to find them (guns).")) The Government further contends that, after two more officers arrived at Defendant's home, one proceeded to explain why he was executing the Suspension Order and read it out loud. (Gov. Opp. at 5.) According to the Government, Defendant then stated that he had a safe in his bedroom that contained the keys to other safes where pistols might be found. (*Id.*) An officer asked if he could get into the bedroom safe, and the Defendant gave the officers the key for that safe, which contained the keys to the other safes in his garage. (*Id.*) Inside

the garage safes, the officers found a number of firearms, including the Uzi. (*Id*.) Because the safes contained illegal assault weapons, an officer placed Defendant under arrest. (*Id*. at 5–6.)

The next day, on January 1, 2019, because the officers did not find all of the pistols listed on Defendant's permit, they applied for, obtained, and executed a warrant to search Defendant's home and cars. (*Id*. at 6.) On January 24, 2019, officers arrested Defendant on the basis of a one-count complaint charging him with possession of the Uzi. (*Id*.) On March 14, 2019, a grand jury returned an indictment charging Defendant with violations of 26 U.S.C. §§ 5845(a)(4) and 5861(d). (Indictment, ECF No. 8.)

## DISCUSSION

### I. <u>Suppression</u>

In the instant Motion, Defendant seeks to suppress the Uzi on the ground that the officers did not have a warrant to search his home and he did not consent to the search, therefore the search violated the Fourth Amendment and the Uzi should be considered "fruit from the poisonous tree." (*See* Def. Mem. at 2–5.) Defendant also seeks to suppress all statements that he made to the officers on December 31, 2018, on the ground that he was in custody for *Miranda* purposes, but was not advised of his rights before he was interrogated. (*See id*. at 5–9.)

The Government opposes Defendant's Motion by arguing that (i) Defendant voluntarily consented to the search of his home; and (ii) Defendant's December 31, 2018 statements were not the product of custodial interrogation. (*See* Gov. Opp. at 6–17.)

#### a. Basis for Suppression of the Uzi

The Fourth Amendment protects individuals against "unreasonable searches and seizures" of their homes. U.S. Const. Amend. IV. In general, searches and seizures are unreasonable and invalid unless based on probable cause and executed pursuant to a warrant. *See Schneckloth v.*

3

*Bustamonte*, 412 U.S. 218, 219 (1973). If a person consents to a search of his or her home, however, a warrantless search may be valid. *See United States v. Deutsch*, 987 F.2d 878, 883 (2d Cir. 1993). Consent may be inferred from an individual's words, acts, or conduct. *Id.* at 883.

Consent must be voluntary and "not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*, 412 U.S. at 228. The government bears the burden of proving by a preponderance of the evidence that the consent was voluntary. *United States v. Snype*, 441 F.3d 119, 130–31 (2d Cir. 2006). The voluntariness of consent is determined by reference to the "totality of all the circumstances." *United States v. Isiofia*, 370 F.3d 226, 230 (2d. Cir. 2004) (quoting *Schneckloth*, 412 U.S. at 227). Furthermore, the standard for measuring the scope of a suspect's consent is "objective reasonableness," which prompts the inquiry: "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" *United States v. O'Brien*, 926 F.3d 57, 76–77 (2d Cir. 2019) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)) (internal quotation marks omitted).

It is undisputed that the law enforcement officers did not obtain a warrant prior to the December 31, 2018 search of Defendant's home. Defendant maintains that he did not provide consent to the search of his home, and that any purported consent was not voluntary. Specifically, Defendant argues any consent given was not "the product of his free and unconstrained choice" for several reasons: (i) 15-20 officers "stormed" his house with "guns drawn," (ii) the agents attempted to execute the Suspension Order as if it were a warrant, and (iii) they handcuffed Defendant. (Def. Mem. at 8–9.) Defendant also questions the officers' decision to "sit on" his house overnight. (*Id.* at 9.)

By contrast, the Government contends that, by his words and actions, Defendant consented to the entry and search, that Defendant's consent was voluntary, and that, when viewed in the

totality of the circumstances, the officers reasonably believed they had consent to search Defendant's home for weapons. (Gov. Opp. at 7.)

### b. Basis for Suppression of Defendant's December 31, 2018 Statements

Statements made during a custodial interrogation are generally inadmissible unless a suspect has first been advised of his or her rights. *Miranda v. Arizona*, 384 U.S. 436, 448–50 (1966). In determining whether a suspect was in custody, a court "looks at all the surrounding circumstances." *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016). The relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). Specifically, a two-part objective test asks (1) "whether a reasonable person would have thought he was free to leave the police encounter at issue" and (2) whether "a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004) (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983); *Stansbury v. California*, 511 U.S. 318, 322 (1994)).

Although both elements are required, the second is the "ultimate inquiry" because a "free–to–leave inquiry reveals only whether the person questioned was seized." *Newton*, 369 F.3d at 672 (internal quotation omitted). An individual's subjective belief about his or her status generally does not bear on the custody analysis. *Faux*, 828 F.3d at 135. Nor do the officers' perceptions, although they "bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned," but "only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Stansbury v. California*, 511 U.S. 318, 325 (1994) (quotation marks and citations omitted).

An individual who understands that his detention is "not likely to be temporary and brief" and feels that he is "completely at the mercy of police" could reasonably deem his situation comparable to formal arrest. *Newton*, 369 F.3d at 675 (quoting *Berkemer*, 468 U.S. at 437–38). Relevant considerations include: (1) "the interrogation's duration"; (2) "its location (*e.g.*, at the suspect's home, in public, in a police station, or at the border)"; (3) "whether the suspect volunteered for the interview"; (4) "whether the officers used restraints"; (5) "whether weapons were present and especially whether they were drawn"; and (6) "whether officers told the suspect he was free to leave or under suspicion." *U.S. v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011) (internal citations and alterations omitted). Ultimately, however, all factors must be weighed, and no one factor is dispositive; rather the court must assess whether the circumstances would tend to make an individual reasonably feel as though they were being questioned in a police-dominated setting. *See Newton*, 369 F.3d at 675 (explaining that the animating concern behind the various factor tests used to assess "custody" for *Miranda* purposes is coercive interrogation techniques.)

It is undisputed that Elmowsky was questioned without *Miranda* warnings on December 31, 2018. Defendant maintains that this questioning constituted a custodial interrogation and the statements he made must be suppressed. Defendant argues that he "reasonably and sensibly believed he was not free to leave" because (i) 15-20 officers stormed his house with guns drawn, (ii) Defendant was handcuffed, (iii) he was not allowed to leave, (iv) the officers did not tell him he was free to leave, and (v) deputies were posted to "sit on" his home overnight. (Def. Mem. at 6–7.)

The Government disagrees, contending that Defendant was not in custody at the time of his December 31, 2018 statements, and, accordingly, the officers were not required to provide *Miranda* warnings prior to speaking with him.

### c. An Evidentiary Hearing Is Warranted

A court must conduct an evidentiary hearing on a suppression motion when "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 77 (2d Cir. 2018) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 157, 165 (2d Cir. 2008)). To justify an evidentiary hearing, the defendant "must submit an affidavit by someone with personal knowledge that disputed facts exist." *United States v. Martinez*, 992 F. Supp. 2d 322, 325 (S.D.N.Y. 2014) (quoting *United States v. Noble*, No. 07 Crim. 284, 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008)).

The Court notes that the parties have presented two versions of the events that transpired on December 31, 2018. There are conflicting accounts as to the circumstances under which the officers entered and searched Defendant's home, as well as the nature of the interactions between Defendant and the officers. Defendant has submitted an affidavit stating that he "did not provide consent to any search of [his] home" and that he was "forcibly placed into custody." (Def. Aff. at 1.) This directly contradicts the facts as presented in the Government's submission (*see* Gov. Opp. at 4–5) as well as the facts as stated in the Complaint (*see* Compl. ¶ 4(c)) and Bill of Particulars (*see* Bill of Particulars at 2).

The Court finds that Defendant has sufficient personal knowledge of the events that transpired on December 31, 2018, and that his statements concerning how the search and seizure was executed manage to raise factual issues that are in dispute—namely, (i) whether Defendant voluntarily consented to law enforcement officers' entry into and subsequent search of his home, and (ii) whether Defendant was in custody at the time of his December 31 statements. The Government acknowledges that an evidentiary hearing is warranted, and also states that it consents

to such a hearing on the aforementioned issues. (Gov. Opp. at 3, 7, 11.) Accordingly, the Court grants Defendant's Motion to the extent it requests an evidentiary hearing.

## II.  Defendant's Request for Dismissal of the Indictment

Defendant also moves the Court "for an Order granting the Dismissal of the Indictment" (Notice of Motion, ECF No. 22 at 1; Def. Mem. at 9.) It is well-settled that the Court cannot "dismiss a facially valid indictment based on insufficient evidence." *United States v. Ortiz*, 666 F. Supp. 2d 399, 406 (S.D.N.Y. 2009). Defendant does not appear to argue that the Indictment was facially defective, and therefore Defendant's request to dismiss the indictment is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED in part and DENIED in part. It is denied insofar as it seeks to dismiss the Indictment and suppression at this time. It is granted insofar as Defendant seeks an evidentiary hearing. Accordingly, the parties are directed to appear at their next status conference on November 15, 2019 at 11:30 am for the purposes of scheduling an evidentiary hearing on the outstanding issues related to this motion. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 22.

Dated:   November 14, 2019        SO ORDERED:
         White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

8