USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/17/2020_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -against-

PAUL ELMOWSKY,
               Defendant.

---

19-cr-175 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Defendant Paul Elmowksy ("Defendant") is charged by Indictment with one count of knowingly receiving and possessing a firearm that was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5845(a)(4) and 5861(d). (ECF No. 8.) A trial was scheduled for November 30, 2020 and is expected to be rescheduled to a date in the near future due to COVID-19. (ECF No. 46.) Before the Court is the Government's motion *in limine* (the "Motion"). (ECF No. 51.)

## BACKGROUND

The Government alleges the following facts in this paragraph in support of its Motion. On December 31, 2018, the Supreme Court of New York, Rockland County issued an order suspending Defendant's pistol permit. (ECF No. 51 at 1.) Officers from various law enforcement departments went to Defendant's home to execute the order, which required taking temporary possession of Defendant's weapons pending a hearing. (*Id*.) Defendant consented to the officers' entry and told officers that he had a safe in his bedroom that contained keys to other safes where pistols might be found. (*Id*.) Defendant gave law enforcement officers the key to the bedroom safe

and the combination to unlock a safe in his garage. (*Id*.) Officers were able to open Defendant's safes and seized twenty-six weapons.[1] (*Id*. at 2.)

On January 24, 2019, officers arrested Defendant on a one-count complaint charging him with possession of an unregistered short barrel rifle—specifically, the Uzi mini carbine short-barreled rifle (the "Uzi")[2]—in violation of 26 U.S.C. §§ 5845(a)(4) and 5861(d). (ECF No. 2.)

On October 16, 2020, the Government filed its Motion seeking to admit photographic evidence of Defendant's possession of all twenty-six weapons and various accessories to demonstrate Defendant's familiarity with weapons and his knowledge of the physical characteristics of the Uzi. (*Id*.) The Government also seeks to introduce evidence that law enforcement officers were present at Defendant's home to enforce a lawful pistol permit suspension order. (*Id*.) Finally, the Government seeks to preclude Defendant from cross-examining a Government witness regarding his/her 1996 arrest and prosecution. (*Id*.)

On October 31, 2020, Defendant responded in opposition to the Government's motion. (ECF No. 54.) On November 6, 2020, the Government filed a reply to Defendant's opposition. (ECF No. 58.)

## STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial

---

[1] The twenty-six weapons include various rifles, revolvers, and pistols. Because "firearm" has a specific definition under 16 U.S.C. § 5845(a), the Court will refer to these as "weapons" although colloquially they are often referred to as firearms.

[2] On the Indictment, filed March 14, 2019, the firearm is described to as an "Uzi Model Mini Auto 9MM" firearm and on the Superseding Indictment, filed November 9, 2020 the firearm is referred to as an "Uzi Model Mini Carbine 9mm caliber" firearm. ECF No. 8; ECF No. 59.

on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence ... and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," United States v. Southland Corp., 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## DISCUSSION

### I.     Evidence of Defendant's Possession of Other Weapons and Accessories

"The National Firearms Act 'NFA' imposes strict regulations on certain statutorily defined 'firearms.'" *United States v. Shaw*, 670 F.3d 360, 363 (1st Cir. 2012). Section 5845(a)(4) defines a "firearm" to include "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length" and "rifle" to mean "a weapon . . . intended to be fired from the shoulder [and] use the energy of the explosive

in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger." 26 U.S.C. §5845(a)(4). Section 5861(d) prohibits possession of a "firearm" that "is not registered [to the possessor] in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d).

In order to establish a violation of § 5861(d), the Government need not show the defendant knew the weapon in his/her possession was unlawful or was unregistered. *Rogers v. United States*, 522 U.S. 252, 254-55 (1998) (citing *United States v. Freed*, 401 U.S. 601 (1971); *Staples v. United States*, 511 U.S. 600 (1994)). Instead, to satisfy § 5861(d)'s *mens rea* requirement, the Government must show that "the defendant knew the item [he/she] possessed had the characteristics that brought it within the statutory definition of a firearm." *Id.* at 254. (citing *Staples*, 511 U.S. 600). As such, the Government must prove that, among other things, Defendant was aware the Uzi had a "rifled bore." 26 U.S.C. § 5845(a)(4).

The Government seeks to admit photographs and testimony as to Defendant's possession of twenty-six weapons and accessories, including speed loaders, shoulder hostlers, magazines, scopes, and ammunition. ECF No. 51 at 3; ECF No. 58 at 1. The Government does not seek to introduce the weapons themselves, except for the Uzi. ECF No. 51.

The Government argues this evidence is relevant because it demonstrates (1) Defendant's general knowledge and familiarity with weapons and (2) the characteristics which distinguish the Uzi from other weapons—*e.g.*, the presence, or absence, of a rifled bore—, each of which in turn tend to show Defendant's awareness of the Uzi's "rifled bore." The Government argues that the "probative value of this evidence is not substantially outweighed by a danger of unfair prejudice, particularly with a limiting instruction from the Court." *Id.*

To support its case, the Government relies primarily on *United States v. Klebig*, 600 F.3d 700 (7th Cir. 2009). In that case, the Court found that the defendant's ownership of "a wide variety of handguns and long guns was highly relevant to whether he could tell the difference between the two when a weapon has been modified as was [a] sawed-off rifle." *Id.* at 715. In *Klebig*, the Government offered twenty-three weapons into evidence and dramatically displayed them in the courtroom. *Id.* at 707-10. The defendant objected to the admission of the weapons and suggested that the introduction of photographs would be less prejudicial. *Id.* at 708. On appeal, the Court found the Government's introduction of the twenty-three weapons problematic because the judge did not consider the prejudicial effect of the display, namely that it tended to portray the defendant as dangerous. The Court reversed and remanded, finding that the district court "should have more carefully managed the introduction of evidence relating to [the defendant's] extensive collection of legally owned guns, so that the presentation would have focused on the relevant issue of [the defendant's] knowledge of and familiarity with weapons instead of on the sheer volume of fire power that [the defendant] possessed." *Id.* at 722. *See also Shaw*, 670 F.3d at 365 (finding that defendant's possession of two shotguns of varying barrel lengths and ammunition allowed the jury to conclude "he was an experienced hunter who understood the desirability of different weapons in different circumstances [which allowed the jury to infer that he] knew about distinct characteristics of different guns generally, and particularly those of [the regulated firearm]"); *United States v. Giambro*, 544 F.3d 30 (1st Cir. 2008) (finding that the defendant's large gun collection could allow the jury to "reasonably infer [the defendant] was a gun collector or at least had a specialized knowledge and interest in firearms" which supported knowledge of the statutory characteristics).

Defendant opposes the introduction of photographs of the twenty-six weapons and accessories. Defendant argues that the evidence is not relevant because it would not dispose of the issue of whether Defendant knew the Uzi had a "rifled bore." ECF No. 54 at 2. Further, Defendant argues that producing photos of weapons would have the same prejudicial effect the physical weapons had in *Klebig*. *Id*. Defendant argues that the sheer volume would have an unduly prejudicial effect, regardless of the manner in which they are presented. *Id*. Defendant further argues that introduction of photographs of these weapons would require the introduction of additional off-issue evidence in order to establish that the weapons were lawfully possessed.[3]

The Court agrees with the Government that Defendant's possession of a large variety of weapons is relevant in that it can demonstrate Defendant's expertise and knowledge of weapon characteristics. Further, the Court agrees that the weapons may be used to demonstrate the characteristics that distinguish the Uzi from Defendant's other weapons that do not require registration. The Court also agrees with Defendant that introduction of the twenty-six weapons— most, if not all, of which are lawfully owned—runs the risk of being highly prejudicial.

The Government may present *testimony* as to Defendant's possession of the twenty-six weapons and accessories so that it demonstrate the breadth of Defendant's knowledge of weapons and firearm characteristics. Further, the Government may present *photographic evidence* of

---

[3] Defendant also argues that evidence of his other weapons cannot be introduced into evidence because the Supreme Court has held that "possession of certain types of unregulated weapons which are difficult to distinguish from other regulated types 'has been held to be inadequate to establish the requisite knowledge.'" (*Id*.) (citing *Staples v. United States*, 511 U.S. 600, 622 (1994) (Ginsburg, J., O'Connor, J., concurring) (quoting *United States v. Harris*, 959 F.2d 246, 261 (D.C. Cir. 1992) (*per curiam*), cert. denied, 506 U.S. 932 (1992). The Court first notes that this is a critical misquote. The Supreme Court's concurrence actually says: "mere unregistered possession of certain types of [*regulated* weapons]—often [difficult to distinguish] from other, [*non-regulated*] types." *Staples*, 511 U.S. at 622. As to the substance, this quote in inapplicable to Defendant's argument. Justices Ginsburg and O'Connor were merely confirming that possession of an unregistered, regulated firearm—such as the Uzi in this case—is insufficient evidence to show knowledge under § 5861(d) where the firearm is difficult to distinguish from other unregulated weapons. The quote and cases it originates from say nothing regarding the usage of other weapons as evidence of Defendant's knowledge.

Defendant's weapons to the extent that the photographs serve to demonstrate the variety of Defendant's weapon collection or serve to demonstrate the distinguishing characteristics of the Uzi. The Government may not, for example, provide photographs of multiple weapons that have similar characteristics and vary only in brand or slightly in size. Such photographs would not add to a showing of Defendant's expertise and would not serve to help the jury understand how the Uzi is distinguished from other weapons. Therefore, to avoid undue prejudice, the Court requests that the Government provide only these probative photographs.

## II.    Evidence that Law Enforcement Officers Lawfully Searched Defendant's Home with Defendant's Assistance

The Government seeks to admit testimony that law enforcement was at Defendant's home to execute a lawful search, pursuant to a lawful pistol permit suspension order, and with consent and assistance from Defendant. ECF No. 51 at 7.

The Government argues this evidence is relevant because Defendant's assistance in locating and securing the weapons evidences Defendant's possession of the weapons. *Id*. The Government also argues that this evidence prevents the jury from speculating as to whether the search and seizure was lawful. *Id*. The Government alleges that cases like these are "politically divisive" and "can engender strongly-held opinions" and create a risk that jury members may be improperly influenced by concerns that law enforcement acted improperly. *Id*. Defendant argues that the lawfulness of the search was already established and is of no concern to the jury. ECF No. 54 at 2.

The Court agrees with the Government that Defendant's assistance in finding the weapons is probative of Defendant's possession of the weapons. To the extent Defendant seeks to contest possession of the firearms, the Government is permitted to produce evidence of Defendant's

assistance during the search. If Defendant stipulates that the firearms were in his possession, the testimony is not relevant and cannot be introduced.

The Court further finds that the reason for law enforcement officers' presence at Defendant's home—*i.e.* to execute a lawful, court-authorized pistol permit suspension order—is relevant for background purposes. To mitigate any potential prejudicial effect, the Court will issue a limiting instruction to the jury directing it to consider this testimony for background purposes only and not for the purposes of inferring propensity.

## III.    Cross-Examination of a Government Witness

The Government asks the Court to prohibit cross-examination of a law enforcement witness regarding a 1996 arrest and prosecution.  ECF No. 51 at 8. According to the Government, at the age of eighteen, the officer was arrested and charged with harassment in connection with a domestic incident. *Id*. The Government indicates that the case was adjourned in contemplation of a dismissal, and ultimately dismissed and sealed. *Id*. Further, the Government indicates that it is unaware of any adverse credibility findings against the officer. *Id*. Defendant did not indicate in his opposition whether he intends to cross-examine this witness and did not oppose this portion of the Government's motion.

The Court agrees with the Government and will prohibit cross-examination of this witness regarding that witness's arrest, prosecution, and the underlying conduct that occurred in 1996. Only relevant evidence is admissible. Fed. R. Evid. 401. A witness may be cross-examined regarding specific instances of conduct that are probative of the witness's character for truthfulness or untruthfulness. Fed. R. Evid. 608. Evidence of a prior criminal conviction is admissible to attack the credibility of a witness in certain circumstances. Fed. R. Evid. 609. However, the use of this evidence is greatly restricted if more than ten years have passed since the witness's conviction or release from confinement, whichever is later. *Id*.

In this case, Fed. R. Evid. 609 does not apply because the arrest did not result in conviction. That there was no conviction decreases the probative value of the arrest. *See Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (finding that an arrest in and of itself does not impeach the integrity or impair the credibility of a witness). *See also Michelson v. United States*, 335 U.S. 469, 482 (1948). In a case such as this, where the Government indicates the 1996 arrest did not include any adverse credibility findings, the Court finds that the arrest is likely not relevant. *Id.* Further, even if it were relevant, the lapse of nearly twenty-five years means the arrest is of little probative value. *See* Fed. R. Evid. 609 (recognizing that a lapse of time decreases the value of a criminal conviction). Therefore, the Court will prohibit cross-examination of this witness as it pertains to the 1996 arrest.

## IV.    Testimony of Federal Firearms Licensed ("FLL") Dealer

In his opposition brief, Defendant indicates he intends to have the FLL dealer who sold him the Uzi testify that the Uzi was deemed by the seller and gun store personnel not to be a "firearm", and therefore, did not require registration under the National Firearms Registration and Transfer Record. ECF No. 54 at 3. The Government argues that, to the extent Defendant seeks to use this evidence to demonstrate that Defendant lacked knowledge that his possession of the Uzi required registration under the NFA, the testimony is irrelevant and inadmissible because knowledge that the firearm requires registration under NFA is not an element of the offense of § 5861(d).

The Court disagrees with the Government regarding the FLL dealer's testimony. It is true that ignorance of the law is not a defense to § 5861(d). However, Defendant's opposition brief does not claim ignorance of the law. Instead it claims Defendant purchased the Uzi from a federally-licensed gun store and that the seller and gun store personnel believed it was not a "firearm" that required registration. If the reason the seller and gun personnel believed the Uzi was

not a "firearm" was due to their perception of its characteristics, this testimony would certainly be highly relevant. Further, even if the FLL dealer and gun personnel were misguided due to their own ignorance of the law, their declaration may be relevant to Defendant's own awareness of the Uzi's characteristics. For example, if Defendant is unfamiliar with this type of weapon, but aware of the law, the dealer's reassurance may be evidence of Defendant's lack of knowledge of the Uzi's characteristics. As such, the Court declines to exclude the FLL dealer's testimony to the extent it is relevant and admissible and will make these determinations at trial.

## CONCLUSION

For the foregoing reasons, (1) testimony as to Defendant's weapon collection, (2) select photographs of Defendant's weapon collection, (3) testimony as to law enforcement's lawful purpose for searching for and seizing Defendant's weapons, and (4) testimony by the FLL dealer regarding Defendant's Uzi are admissible, provided the moving party lays the necessary foundation at trial. Cross-examination of the law enforcement witness regarding a 1996 arrest and prosecution is prohibited. The Clerk of the Court is respectfully directed to terminate the pending motions at ECF No. 50, 51, and 54.

Dated:   November 17, 2020
         White Plains, New York

SO ORDERED:

_____

NELSON S. ROMÁN
United States District Judge